FORET, Judge.
This is a withdrawing-partnership-interest dispute. The sole issue on appeal is whether or not plaintiff, Frank H. Marek, had a one-eighth ownership interest in the Medical Arts Group partnership upon withdrawal. Plaintiff raised several issues at the trial level, all but one of which he has since abandoned on appeal. [See Footnote 1, infra.]
The trial court has handed down excellent reasons for judgment on the issue involved, along with a thorough summary of the seminal facts. We indulge ourselves *856 in the liberty of adopting pertinent passages thereof as our own.
“The Medical Arts Group was formed as a Louisiana partnership in July of 1975 by Drs. Boyd M. Woodard, Charles T. White, Robert C. Looney, D.S. Paraguya, Earl R. Stagg, Jr. and Frank H. Marek. Prior to its formation the group contacted David Taylor, a management consultant specializing in the formation of medical groups, to assist them in the organization of the partnership. The group held many meetings with Mr. Taylor and had extensive discussions to determine exactly what type of organization would best fit their needs. In accordance with his guidance and suggestions and after consultation with counsel the group ultimately formed two partnerships. The first partnership was called the Medical Arts Group and the second was called Diversified Investors. The parallel partnerships were set up.to take the greatest advantage of the tax laws as well as to provide ease of entry and exit for incoming and withdrawing partners. The primary function of Diversified Investors was the holding of the group’s tangible assets. The primary function of the Medical Arts Group was to provide medical services and to generate income. This dispute arises out of Dr. Marek’s withdrawal from the Medical Arts Group. His withdrawal from Diversified Investors was resolved through settlement and is not in issue herein.
“It should be noted at the outset that Dr. Marek was thoroughly involved in the formation of this partnership. He spent a great deal of time discussing the organization of the partnership with David Taylor and with the other partners. He complains now that he was treated unfairly by the other partners. David Taylor testified that Dr. Marek was treated differently in the organization of this partnership because the practice of radiology [which was Dr. Marek’s specialty] does not tend to generate incoming patients but rather is supported on a referral basis by the patients brought in by the other doctors. This was a paramount consideration when income allocation was discussed. It should also be noted that, at the time of the formation of the Medical Arts Group, Dr. Marek had extensive prior experience with medical partnerships and he had equal footing with the other doctors in negotiating the organization of this partnership.
“Dr. Marek has asserted several claims against the Medical Arts Group which may be classified as either claims which arose while he was a partner or claims which arose upon his withdrawal.[1]
******
“Dr. Marek’s final claim arose out of his withdrawal from the Medical Arts Group. Dr. Marek contends that he had a one-eighth (⅛) ownership interest in the partnership. He further contends that this alleged interest has an appraised value of $60,575.00. He bases this valuation on what he claims is his portion of the accounts receivable. He also claims his termination entitlement under the Partnership Agreement in the amount of $14,243.00.
“The partnership agreement at pp. 9-11, specifies the following payments are to be made upon withdrawal, whether voluntary or involuntary:
1. The amount of the partner’s cash capital account.
2. The partner’s share of undistributed net income for the month in which he withdraws.
3. Partner’s share in any other undistributed income.
4. A termination payment based on the average of the previous twelve (12) months income times a factor based on seniority.
“Paragraph B on p. 10 of the Partnership Agreement indicates that in exchange for the payment under this formula the withdrawing partner shall sell, assign and transfer to the remaining partners, all rights, title and interest in the partnership and its property and assets.
*857 “On page 7 under the heading “COLLECTION, EXPENSES & FIRM PROPERTY” paragraph “A” indicates that all charges and billing for professional services shall belong to the partnership and shall be made in its name and all collections shall be made by the partnership and distributed in accordance with the partnership income distribution formula. This provision indicates that accounts receivable belong to the partnership as they form part of the charges and billing for professional services.
“Dr. Marek contends he is entitled to one-eighth of the accounts receivable as part of his ownership interest in the partnership. He bases this argument on a document identified as exhibit P-4 which is entitled “Agreement relative to Diversified Investors and Medical Arts Group”. This agreement in part, provides the following:
“All the undersigned agree that Dr. Ma-rek’s interest in Diversified Investors and Medical Arts Group is ⅛⅛ of the whole, and that irrespective of Dr. Traub or Dr. Roberts coming into the partnership, Dr. Marek’s interest upon withdrawal shall not be less than ⅛⅛; the interest being that Dr. Marek shall not suffer any decrease in what he would have otherwise received had Dr. Traub and Dr. Roberts not become partners.”
“This document was signed by all of the partners of the Medical Arts Group and Diversified Investors. Dr. Marek contends that this document supersedes the Partnership Agreement and the By-Laws and that in accordance with its terms he is entitled to one-eighth (⅛) of the partnership’s assets, which consists primarily of the accounts receivable.
“It should be noted that this agreement was prepared on behalf of Dr. Marek and therefore any ambiguity therein must be construed against him. This document was passed around to each of the doctors for their signature rather than being submitted during a regular or special meeting. It does not purport to change or amend either the Partnership Agreement or the ByLaws. However, it has been signed by all of the partners and therefore is enforceable among them to the extent its terms are clear.
“At the time that this agreement was entered into, all that Dr. Marek was entitled to upon withdrawal, was payment in accordance with the formula provided in the pages 9-11 of the Partnership Agreement, as set forth above. He was not entitled to any amount of the accounts receivable, except as provided for in the termination payment provision, as can clearly be seen from the first amendment to the Partnership Agreement.
“The first amendment to the Partnership Agreement became effective January 1, 1977 and contains the following language:
II
Notwithstanding any provisions to the contrary in the Partnership Agreement, upon the withdrawal (voluntary or involuntary) of any partner from the Medical Arts Group partnership, all accounts receivable of the partnership shall remain in the partnership and the withdrawing partner shall have no interest in or claim thereto, except as provided in Paragraph (d) on page 11 of the Partnership Agreement.
“Dr. Marek signed both the original Partnership Agreement and the foregoing amendment. His contention now that he is not bound by the four corners of these two agreements is untenable. His contention that the document entitled Agreement relative to Diversified Investors and Medical Arts Group supersedes the Partnership Agreement as amended is equally untenable. Because the language in that agreement (P-4) is ambiguous and because the agreement was prepared on behalf of Dr. Marek by his attorney, it must be construed against him. The only reasonable interpretation of this document is that it was an assurance to Dr. Marek, by the other doctors, that upon his withdrawal, he would not suffer any detriment due to the fact that two additional doctors were being admitted to the partnership. The reference to a one-eighth (Vs) interest in this document is meaningless when it is read in conjunction with the Partnership Agree *858 ment, as amended. Under the Partnership Agreement, as amended, Dr. Marek had four interests in the partnership. (1) a voting interest (2) an income interest (3) a withdrawal interest and (4) an interest upon liquidation.
“Dr. Marek contends that he had a one-eighth (⅛) ownership of the whole. If this were true each of the aforementioned interests would equal one-eighth (Vs). This is clearly not the intent of the Partnership Agreement which addresses each of these interests separately. The voting interest is the only interest in which each of the partners had an equal interest. The income interest of each partner is determined in accordance with the By-Laws and depends upon a combination of seniority and productivity. The withdrawal interest is based upon the formula on pp. 9-11 of the Partnership Agreement. The liquidation interest is contingent upon the solvency of the partnership at the time of the liquidation. The interest of each partner in the net assets would be in proportion to their respective interest as set forth in the ByLaws, in accordance with Paragraph F page 3.
“However a withdrawing partner divests himself of this interest when he withdraws in accordance with Paragraph B page 10 which requires a withdrawing partner to sell, assign and transfer to the remaining partners all rights, title and interest in the partnership and its property and assets. In exchange for the withdrawing partner’s right, title and interest in the partnership and its property, the partnership will pay the withdrawal interest as outlined above.
“Dr. Marek’s withdrawal interest was computed by the partnership’s accountant, Gus Schram, to be as follows:
1) Cash Capital Account -$18,215.00
Negative Balance interpreted as 0 0.00
2) Undistributed Net Income $6158.00
Paid Jan. 82 -$6158.00
Outstanding Balance 0.00
3) Other Undistributed Net Income 0.00
4) Severance Pay $14,243.00
Total Distribution $14,243.00
“Dr. Marek takes no issue with this determination under the formula. I find that the foregoing amount is the only thing which Dr. Marek was entitled to under the Partnership Agreement. There is abundant testimony in the record that payment in this amount has been tendered although Dr. Marek testified that he has not cashed all of the checks.
“For the foregoing reasons I find for the defendant, Medical Arts Group and against the plaintiff, Dr. Frank H. Marek. Defendant, Medical Arts Group, is however required to make good the checks previously tendered to Dr. Marek, which have not been cashed, in order that he recover the full amount he was entitled to under the formula.”
We agree with the reasoning and judgment of the trial court, and accordingly affirm it in all respects. Cost of this appeal are assessed against appellant, Frank H. Marek.
AFFIRMED.

. Marek abandoned his first three claims on appeal. Therefore, the only issue before us is whether the trial court erred in holding that Marek had no interest or claim to the accounts receivable when he withdrew from the partnership.