JjTERRI F. LOVE, Judge.
This appeal involves a dispute concerning the distribution of certain partnership assets precipitated by the withdrawal of one of the partners of a law 'firm. The issue presented for review is whether the departing lawyer is entitled to a percentage share of the firm’s total assets in addition to the net profits specifically referred to in the partnership agreement between the lawyer and the firm. The subissue is whether the Louisiana Civil Code default provisions for partnerships apply to the instant scenario where the partnership agreement expressly refers only to the payment of one category of assets upon departure.

Factual Background

Appellant, Mr. Mitchell J. Hoffman, was a law partner in the firm of McCloskey, Dennery, Page & Hennesy (“the McClos-key firm”) from January 1980 until its voluntary dissolution in June 1985. Several of the partners from the McCloskey firm, including appellant, joined together in July 1985 with others to form the newly created partnership of Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Fri-lot (“the Lemle firm” or “appellee”). The partners of the McCloskey firm became members of the Lemle, Kelleher, Kolhm-eyer, Dennery, |?Hunley, Moss & Frilot firm. The name of the partnership was changed and the articles of partnership amended and restated. There was no formal written agreement between the McCloskey firm and the Lemle firm, but each partner of the McCloskey firm who became a partner of the Lemle firm signed an agreement entitled “Amended and Restated Articles of Partnership” (“the agreement” or “the partnership agreement”). The agreement was effective on July 1, 1985 and is the only document governing the relationship between appellant and the new Lemle firm.
*1255 It was agreed that the MeCloskey partners would contribute their accounts receivables, work-in-progress, debt, furniture, equipment, capital accounts, and other assets to the Lemle firm. When appellant joined the Lemle firm, he had a 14.8% ownership interest of the net value in the MeCloskey firm’s total assets. The MeCloskey partners brought with them total accounts receivable of $222,630.00, cash capital of approximately $17,000.00 (the remainder after the MeCloskey firm’s debt was satisfied), a table, and a few chairs. In return, the MeCloskey partners received the immediate right to participate in the old Lemle firm’s existing work-in-progress and accounts receivable. The latter totaled around $1.5 million in July 1985.
The partnership agreement signed by the new partners contained compensation terms for withdrawing partners. Article 15.1 of the partnership agreement provided, in pertinent part:
15.1 If a partner ceases to be a member of the Partnership, such partner, or such partner’s heirs, successors or assigns, shall be entitled to (i) the balance, if any, of the share of the net profits of the Partnership due to such partner for the fiscal year preceding the fiscal year in which such Partner ceases to be a member of the Partnership; and la(ii) an amount which bears the same proportion to the share of the net profits of the Partnership for the fiscal year in which such Partner ceases to be a member of the Partnership that such Partner would have been entitled to receive, if such Partner has been a member of the Partnership for the entirety of such fiscal year, as the number of months in the period com-
mencing on the first day of such fiscal year and ending on the last day of the month in which such Partner ceases to be a member of the Partnership bears to twelve (12); less
(iii) the amount, if any, due by the Partner to the Partnership by reason of withdrawals by such Partner or otherwise.
Thus, Article 15.1 provided for compensation to the departing partner of the net profits for the fiscal year preceding the partner’s withdrawal and for the net profits from the actual year of withdrawal. No other assets were contemplated in the agreement to be disbursed to departing partners. Article 15.1 corresponded to the practice of the old Lemle firm that no one was required to buy into the assets of the firm when becoming a partner.
In May 1987, appellant resigned from the Lemle firm to open a new firm with a fellow Lemle partner, Mark Stein. The new firm was Lowe, Stein, Hoffman & Allweiss. One month following Mr. Hoffman’s resignation, the Lemle firm gave appellant a check for $34,461.32, representing his share of the net profits as provided for in Article 15.1 of the partnership agreement. Additionally, sometime later, the Lemle firm tendered appellant a check for $1,299.33, representing the amount remaining in his cash capital account at the Lemle firm. Appellant accepted only the larger check, with a written reservation of rights to seek additional amounts that he claimed were due him.
In September 1991, the Lemle firm collected a contingent fee of $15,333,333.00 in an antitrust case known as the Zapata case. In September 1993, Mr. Hoffman filed suit seeking a percentage of the Lem-le firm’s total assets (plus 14damages based upon the non-compete clause)[1] for a total *1256 claim of $300,000.00 plus legal interest from 1987 through the present.

Procedural History

Appellant filed a petition in September 1993, six years after leaving the Lemle firm, seeking a share of the total assets of the partnership at the time of his resignation. Appellee claimed that it had already paid Mr. Hoffman everything he was entitled to receive based upon their partnership agreement. The specified net profits were paid to Mr. Hoffman upon his departure in 1987, but appellant asserts that he is entitled to receive a share of all the other assets of the partnership, such as a percentage of the receivables, work-in-progress, furniture, fixtures, equipment, and other assets.
On October 26, 1999, the trial court granted Mr. Hoffman’s motion for partial summary judgment as to liability. The court held that the partnership provisions of the Civil Code must be applied in this case to determine Mr. Hoffman’s ownership interest because the Lemle Partnership Agreement did not expressly state that the amounts paid (net profits) constituted the entire right, title and interest of the departing partner.
On November 10, 1999, this Court granted the Lemle firm’s emergency supervisory writ application and reversed the judgment of the trial court, instructing the trial court to consider the “genuine issues of material fact ... concerning the intent of the parties, as well as usage, custom, and equity.” Subsequently, the trial court tried the case over a three-day period.
On January 31, 2001, the court rendered judgment in favor of the Lemle firm on the basis of the agreements, the custom and past usage of the Lemle firm, and the inability to calculate the net value of any capital brought into the firm other |sthan cash capital. The trial court dismissed all of appellant’s claims in an amended judgment signed February 12, 2001, in which the trial court stated that its previous judgment “contains a clerical error in that it does not reflect the Court’s intention to dismiss all of plaintiffs claims, reserving unto plaintiff the right to the return of his capital account previously tendered by defendant.” This appeal followed.

Analysis

Appellant asserts that the trial court committed errors of law by: (1) failing to apply the partnership default provisions of the Civil Code; (2) receiving evidence of custom, usage, intent, and equity; (3) failing to nullify the partnership agreement; and (4) finding the non-compete clause valid.[2] Additionally, appellant asserts that the trial court committed manifest error concerning factual issues, such as considering evidence unrelated to the instant dispute in order to establish custom and usage.
The Lemle firm asserted its own assignment of error in answering the appeal, i.e., that the trial court failed to award costs in its favor in its February 2001 amended judgment. Responding to appellant’s assignments, Lemle argued that the trial court: (1) correctly applied the Civil Code articles that allow the parties to set the terms of payment to a withdrawing partner via a partnership agreement; (2) correctly followed the directive of the Fourth Circuit to take evidence concerning usage, custom, and equity; (3) correctly considered that the partnership agreement evidencing the intent of the parties who signed the agreement; (4) correctly de- *1257 dined to nullify the agreement because one of the 54 parties asserted a contrary interpretation to such agreement; and (5) correctly admitted evidence of prior Lemle firm agreements that mirror the provision of the instant agreement to consider for purposes of custom and usage.
1 ^Starting from this Court’s previous ruling, which reversed the trial court’s grant of summary judgment in favor of Mr. Hoffman, we conclude that the trial court followed our directive to hear evidence concerning the intent of the parties, as well as usage, custom and equity. Giving the appropriate deference to the factfin-der’s credibility determinations, we begin the analysis with a review of the applicable law that appellant asserts should govern if his argument is accepted, although this issue arguably is foreclosed by our earlier writ grant. For purposes of providing additional analysis on this issue, however, we address appellant’s Civil Code arguments.
Louisiana Civil Code Article 2804-Par-ticipation in One Category Only, provides as follows:
If a partnership agreement establishes the extent of participation by partners in only one category of either profits, commercial benefits, losses, or the distribution of assets other than capital contributions, partners participate to that extent in each category unless the agreement itself or the nature of the participation indicates the partners intended otherwise. Acts 1980, No. 150, § 1, eff. Jan. 1,1981.
Additionally, comment (c) following the above article explains that:
An exception is made in this article regarding the distribution of capital contributions. If the participation has been set for only one category, e.g., for profits, the presumption that the partner is to participate to that extent in other categories does not cover necessarily his participation in capital contributions. Unless the parties indicate otherwise, capital contributions are restored to partners proportionally, ie., based on the percentage that the capital contribution of each partner bears to the total amount of capital contributions.
Appellant asserted that the default provisions of Article 2804 should apply, which would give him a claim to his percentage of total firm assets rather than merely his share of the net profits, as provided in Article 15.1 of the partnership agreement. Appellant’s rationale is that the partnership agreement does not 17expressly refer to the plan for distributing any firm assets to departing partners other than the net profits, and that Civil Code Article 2804 requires some type of statement or stipulation that the payment of net profits to a departing partner is in exchange for all right, title and interest that the partner had in the partnership. Mr. Hoffman asserts that the Lemle agreement addressed only one category of ownership interest: net profits. The agreement was silent as to all other categories of ownership interest.
In support of his argument, Mr. Hoffman points to the Lemle firm’s offer to pay him back for his capital cash contribution and argues that because this category of ownership interest is not specifically mentioned in the partnership agreement, the film’s assertion that the agreement constitutes all categories is contradicted by this payment offer of cash capital.
Appellant’s reasoning is flawed, however, because Article 2804 presumes that capital contributions are an exception to the rule, as comment (c) to Article 2804 explains. In other words, the fact that the Lemle firm offered to pay Mr. Hoffman for his cash contribution share from the amount that he contributed when he en *1258 tered the firm does not signify that the partnership agreement fails to cover all categories of firm assets because cash capital is presumed to be returned on a proportionate basis and is considered separately from other categories of partnership assets.
The trial court, utilizing this Court's guidance and considering a plethora of evidence, found that based on the custom, practice and intent of the parties, the partnership agreement constituted the entirety of a departing partner’s right to recompense: net profits for the preceding year plus the actual year of departure. Essentially, the trial court concluded that the agreement simply means what it says: |sthe departing partner shall be entitled to the net profits, as set forth in Article 15.1-nothing more and nothing less.
Moreover, both parties point to case law involving similar controversies. For example, in Marek v. Medical Arts Group, 517 So.2d 855 (La.App. 3d Cir.1987), where a departing partner sought to recover a one-eighth interest in accounts receivable of a medical partnership, the Third Circuit upheld the trial court’s decision that Dr. Ma-rek was entitled to only that which was specified in the partnership agreement. The court pointed out several aspects that it considered determinative in reaching this conclusion: (1) Dr. Marek was thoroughly involved in the formation of this partnership; (2) Dr. Marek had extensive prior experience with medical partnerships and participated on “equal footing” with the other partners in negotiating the terms of the agreement; and (3) Dr. Marek signed both the agreement and the amendment, which documents governed departing partners’ compensation. Id. at 856-57.
Similarly, in the instant case, appellant was thoroughly involved in the negotiations and formation of the new partnership. Mr. Hoffman participated on an equal footing with the other attorneys in organizing the new firm. Additionally, he signed the agreement and, as a lawyer, must be expected to understand the terms and conditions to which he assented. Intent of the parties is demonstrated by the terms within the contract. These terms and conditions are the governing force at the time of departure.
Additionally, in Reina v. Hartenstine, 426 So.2d 654 (La.App. 1st Cir.1983), an attorney whose partnership in a firm was terminated contended that he was entitled to a 35% ownership interest of all firm assets upon departure, rather than merely his share of the firm’s net capital. The court held that the terms of the partnership contract applied as written because such terms were agreed to by all 1 ¡¡partners at the time of the partnership’s formation. Thus, the former partner was entitled only to the net capital. The court explained: “It is well settled in Louisiana that a partnership agreement is a synallag-matic and commutative contract created only by the consent of the parties. Corkern v. Corkern, 270 So.2d 209 (La.App. 1st Cir.1972).... The terms of such contract form the law between the parties. L.S.A.-C.C. art.1901.” Id. at 655.
In the same manner, appellant consented to the terms of the Lemle partnership agreement and must be bound by those written terms. The trial court determined that the firm followed its usual customs when Hoffman withdrew, not treating him differently in payment than any other departing partner had been treated over the years. Although appellant argues that the other contracts reviewed were not the same as his and he was not a party to those agreements, that point is irrelevant. The issue that we directed the trial court to hear -evidence on was whether the parties had the requisite intent to contract, and whether they followed the typical cus *1259 tom and usage in a fair manner upon Mr. Hoffman’s departure from the firm. From the findings of the trial court, we determine that the above criteria were satisfied.
Appellant argues that the above cited cases are distinguishable because the agreements therein contained express stipulations indicating that the payments constituted the entire right, title and interest of the departing partner. This assertion is misplaced, however, because, as discussed above, the appellate courts in both situations focused on the participation of the plaintiffs in the negotiations and formation of the agreements and not on whether the agreements contained specific stipulations, as suggested by appellant.
Appellant’s additional arguments concerning the nullity of the contract and the non-compete clause infringing on his ability to practice law also were correctly |inresolved by the district court. The record demonstrates that Mr. Hoffman participated in the negotiations of the contract with the old Lemle firm upon joining that newly created firm. Additionally, with the intellect and experience attributable to a lawyer, Mr. Hoffman can be presumed to have understood the terms and significance of the contract’s provisions. The fact that he agreed to the contractual terms upon joining the firm indicates, as found by the district court, that his intent was to enter into the contract in accordance with the terms and conditions contained therein. The contrary interpretation of the contract’s provisions after leaving is unsupported by the record evidence. Accordingly, we find that the district court correctly decided all the issues appellant raised as assignments of error herein.
Finally, in answer to the appeal, appel-lee asserts that the trial court erred in failing to award costs to the Lemle firm for the instant litigation, which spanned seven (7) years. Citing Article 1920 of the Louisiana Code of Civil Procedure, appel-lee asserts that the trial court abused its discretion by departing from the typical rule of awarding at least the court costs to the party who prevails. Appellee cited no case law in support of its assignment of error and we decline to reverse the trial court because of the vast discretion accorded to the trier of fact in this aspect of litigation.
Therefore, for the foregoing reasons, we affirm the decision of the trial court in every aspect.
AFFIRMED.
ARMSTRONG, J., concurs.

. Mr. Hoffman had been paying the Lemle firm its portion of all amounts received on *1256 accounts receivable for clients who elected to stay with Mr. Hoffman at his new firm.

. Mr. Hoffman also asserted that the non-compete clause infringed on his right to practice law after leaving the firm.