871 So.2d 1187 (2004)
John Michael KOPS
v.
Gary A. LEE, John M. Futrell, Richard M. Perles, Kops, Lee, Futrell & Perles, L.L.P. and Lee, Futrell & Perles, L.L.P.
No. 2003-CA-1407.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 2004.
*1188 Robert A. Kutcher, Nicole S. Tygier, Patricia D. Tunmer, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, Metairie, LA, for Plaintiff/Appellant.
Mitchell J. Hoffman, Joseph E. Windmeyer, Jr., Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P. and Elizabeth J. Futrell, Thomas A. Casey, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Defendants/Appellees.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge Pro Tempore MOON LANDRIEU).
MOON LANDRIEU, Judge Pro Tempore.
The plaintiff, attorney John Michael Kops, appeals a partial summary judgment dated October 28, 1999, in which the trial court dismissed Kops' claims for declaratory judgment, declaring that the partnership agreement was an absolute nullity. We affirm.

Facts
The plaintiff is a former partner of Kops, Lee, Futrell & Perles L.L.P., n/k/a Lee, Futrell & Perles, L.L.P. The plaintiff claims that he had the largest ownership percentage of the partnership, and that he initially contributed more capital to the partnership than any other partner. The former firm commenced in April 1993, and a written partnership agreement was signed by the partners in July 1995.
In May or early June 1997, the plaintiff asserts that disputes and discussions took place concerning other partners who wanted a greater portion of the partnership income allocated to them. Mr. Kops informed his partners that he was interested in terminating his involvement with the partnership or retiring. Mr. Kops asserts that discussions continued, but Mr. Kops did not leave the partnership and continued to practice law with the firm.
Mr. Kops claims he never withdrew but offered a proposal for practicing independent of the partnership or retiring. Mr. Kops maintains that his proposal resulted in his expulsion from the partnership and the confiscation of the value that he brought to it.
Mr. Kops avers that the defendants used partnership funds to register a website on behalf of the new entity, Lee, Futrell & Perles, and deposited partnership funds into an investment account at Smith Barney, without informing Mr. Kops or providing him with signature authority on the account.
Afterwards, Mr. Kops was given notice on October 29, 1997 of a special partnership meeting scheduled for October 31, 1997. The purpose of the meeting was to consider Mr. Kops' withdrawal from the partnership or alternatively, to terminate or expel Mr. Kops from the partnership pursuant to Paragraph 8.6 of the partnership agreement. The partners voted to terminate Mr. Kops from the partnership. The partners determined that Mr. Kops was entitled to receive the value of his capital account pursuant to the terms of the partnership agreement.

Procedural History
On November 24, 1997, Mr. Kops filed his petition for preliminary and permanent injunction, declaratory judgment and other relief against his former law partners and *1189 the new law firm. Mr. Kops claimed that the firm's original partnership agreement was a nullity, and that he was entitled to the value of his ownership interest in the total assets of the firm, rather than the value of his capital account. The defendants filed exceptions and a reconventional demand, and the plaintiff answered.
On November 13, 1998, the defendants filed a motion for partial summary judgment. In its October 28, 1999 judgment, the trial court dismissed counts one through three of the amended petition and Mr. Kops' request for attorney's fees with prejudice. After the trial court decreed that the judgment was final on May 30, 2003, Mr. Kops appealed.
Meanwhile, on March 17, 2000, Mr. Kops filed a second supplemental and amended petition, which added a new count, requesting an accounting of his capital account under the partnership agreement. The defendants answered and filed a reconventional demand for sanctions and attorney's fees against Kops. The plaintiff answered.

Issues
On appeal Mr. Kops contends that the partnership agreement is an absolute nullity under La. C.C. art. 2030[1] because it violates the rule of public order under Rule 5.6 of the Rules of Professional Conduct[2] and Louisiana's law pertaining to non-competition agreements under La. R.S. 23:921.[3] Mr. Kops maintains that the *1190 *1191 trial court erred in dismissing these claims and accompanying claims for accounting and payment of his interest in the partnership, or appointment of a liquidator.

Standard of Review
Appellate courts review summary judgment de novo, using the same criteria utilized by the trial courts to determine whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, 230. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App. 4 Cir. 10/14/98), 720 So.2d 398, 400. The summary judgment procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966 A(2). Pursuant to La. C.C.P. art. 966, the initial burden of proof remains on the mover to show that no genuine issue of material fact exists.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B. However, if the mover will not bear the burden of proof at trial on the matter that is before the court, the mover's burden does not require him to negate all essential elements of the adverse party's claim. Rather, he need only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966 C(2).
After the mover has met its initial burden of proof, the burden shifts to the nonmoving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). When a motion for summary judgment is properly supported, the non-moving party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La. C.C.P. art. 967; Melancon v. D & M Enterprises, 95-0644 (La.App. 4 Cir. 9/28/95), 662 So.2d 54. If the non-moving party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966; Schwarz v. Administrators of Tulane Educational Fund, 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895, 897.
The interpretation of contract provisions is typically a matter of law that properly may be decided on motion for summary judgment. Bolton v. Tulane University of Louisiana, 96-1246 (La.App. 4 Cir. 1/29/97), 692 So.2d 1113; Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031. The determination of whether the contested terms of the partnership agreement constitute a nullity or a valid contract by the parties is a question of law that may be decided by summary judgment.

Provisions of Partnership Agreement
Mr. Kops claims that the partnership agreement contains a non-competition clause and forfeiture provisions that render the partnership agreement an absolute nullity.
*1192 Mr. Kops refers to various sections of the partnership agreement. Section 1.5 of the partnership agreement states:
1.5 Term. The term of the Partnership commenced on April 23, 1993 and shall continue indefinitely unless there is a Liquidating Event, as provided in section 10 hereof.
Section 9.1 defines liquidating events to include:

Section 9

DISSOLUTION AND WINDING UP
9.1 Liquidating Events. The Partnership shall dissolve and commence winding up and liquidating upon the first to occur of any of the following ("Liquidating Events"):
(a) The unanimous decision of the Partners to dissolve, windup, and liquidate the Partnership:
(b) The happening of any other event that makes it unlawful or impossible to carry on the business of the Partnership; or
(c) Any event which causes there to be only one (1) partner.
The Partners hereby agree that notwithstanding any provisions of the law of Louisiana, the Partnership shall not dissolve prior to the occurrence of a Liquidating Event. If it is determined, by a court of competent jurisdiction, that the Partnership has dissolved prior to the occurrence of a Liquidating Event, the Partners hereby agree to continue the business of the Partnership without a winding up or liquidation.
Mr. Kops also refers to Section 8.1, which defines a retiring event:

Section 8

DEATH, DISABILITY, BANKRUPTCY, RETIREMENT, AND EXPULSION
8.1 Retiring Event. For purposes of this Agreement, "Retiring Event" means, with respect to any Partner, the first to occur of (a) the death of such Partner, (b) the Disability of such Partner, (c) the Bankruptcy of such Partner, (d) the Normal Retirement of such Partner, or (e) the expulsion, with or without cause, of such Partner pursuant to Section 8.6 hereof. The Partner with respect to whom a Retiring Event occurs is sometime referred to herein as a "Retiring Partner." Upon the occurrence of a Retiring Event, the Partnership shall continue without dissolution, and the Retiring Partner shall cease to be a Partner and shall have no further right to participate in the Partnership's business, Profits, Losses, or distributions, but shall have only the rights provided in this Section 8.
Section 8.5 provides:
8.5 Normal Retirement. A partner shall be permitted to retire under this Section 8 on or after his sixtieth birthday by giving written notice of his intention to retire as a Partner at least sixty (60) days before the day of such retirement, which notice shall state the date upon which such retirement is to occur. A Partner may retire any other time with the approval of the Partners, other than the Retiring Partner himself. A Partner shall no longer be permitted to participate in the management of the Partnership on or after his seventieth birthday.
Section 8.6 states:
8.6 Expulsion. Any Partner may be expelled immediately, with or without cause, with the affirmative vote of three of the Partners (other than such Partner) at a duly constituted meeting of the Partners specifically noticed for this *1193 purpose. Any of the following reasons would justify expulsion with cause:
(a) Disbarment, suspension, or other major disciplinary action determined adversely to the Partner by any duly constituted authority;
(b) Professional misconduct or violation of the canons of professional ethics, if such misconduct continues after its cessation has been requested by the Partnership;
(c) Any action that injures the professional standing of the firm; if such action continues after its cessation is requested by the Partnership.
Section 7 provides in pertinent part:

Section 7

WITHDRAWALS; ACTIONS FOR PARTITION; BILL FOR PARTNERSHIP ACCOUNTING
7.2 Covenant Not to Withdraw or Dissolve.
Notwithstanding any provision of the Act, each Partner hereby convenants and agrees that the Partners have entered into this Agreement based on their mutual expectation that all Partners will carry out the duties and obligations undertaken by them hereunder, and that, except as otherwise expressly required or permitted hereby, no Partner shall (a) taken any action that would cause a Voluntary Bankruptcy or such Partner, (b) withdraw or attempt to withdraw from the Partnership, (c) exercise any power under the Law of Louisiana to dissolve the Partnership, (d) transfer all or any portion of his interest in the Partnership, (e) petition for judicial dissolution of the Partnership, or (g) demand a return of such Partner's contributions or profits (or a bond or other security for the return of such contributions or profits) without the unanimous consent of the Partners.
7.3 Consequences of Violation of Covenant. Notwithstanding anything to [the] contrary in the Act, if a Partner (the "Breaching Partner") attempts to (1) transfer his Partnership interest in breach of subsection 7.1 above, or (iii) withdraw from the Partnership or dissolve the Partnership in breach of Section 7.2 hereof, the Partnership shall continue and such Breaching Partner shall be subject to this Section 7.3 In such event, the following shall occur:
(a) The Breaching Partner shall immediately cease to be a Partner and shall have no further power to act for or bind the Partnership;
(b) The other Partners shall continue to have the right to possess the Partnership's property and goodwill and to conduct its business and affairs;
* * *
(d) The partnership shall have no obligation to pay to the Breaching Partner his contributions, capital, or profits, but may, by notice to the Breaching Partner within thirty (30) days of his withdrawal, elect to make Breach Payments (as hereinafter defined) to the Breaching Partner in complete satisfaction of the Breaching Partner's interest in the Partnership;
* * *
7.4 Breach Payments. For purposes hereof, Breach Payments shall be made in one hundred twenty installments, each monthly installments, payable at the end of each month, commencing with acceleration of payments in the discretion of the Partnership. The Breach Amount shall be the amount of the *1194 Breaching partners [sic] capital on the date of breaching.
Mr. Kops argues that genuine issues of material fact exist as to whether the partnership agreement restricts Mr. Kops' ability to practice law, rendering the agreement contra bonos mores. Under Section 7.2 Mr. Kops asserts that a partner may never withdraw from the partnership or demand a return of the partner's contributions or profits without the unanimous consent of the partners. Mr. Kops points out that a partner may not retire from the practice of law before age 60.
Mr. Kops further asserts that if a partner no longer wishes to practice with the partnership, he is penalized to such an extent that he would be unable to practice elsewhere or service his clients under Section 7.3. The breach payment is discretionary and is limited to the value of the withdrawing partner's capital account on the date of the breach under Section 7.4. Three partners can expel another partner at any time without cause under Section 8.6. Mr. Kops complains that he is prevented from taking any firm clients with him under Section 8.7, which provides that all client files of the partnership shall remain its property.
Mr. Kops contends that the provisions of the partnership agreement creates an opportunity for abuse. He asserts that the provisions are so burdensome as to render the partnership agreement an absolute nullity. The language of the agreement violates Rule 5.6 of the Rules of Professional Conduct by the absolute prohibition of withdrawal from the partnership and attendant financial penalties.
Mr. Kops refers to Minge v. Weeks, 629 So.2d 545 (La.App. 4 Cir.1993), in which this Court found that although the financial disincentive provisions contained in the employment contract were not directly restrictive, they are of the type that violate the language and spirit of Rule 5.6. Mr. Kops avers that the provisions of the agreement in the present case hamper a partner's ability to take clients with him.

Forfeiture Clause
Mr. Kops contends that Sections 7.3(d), 7.4 and 8.2 of the partnership agreement amount to forfeiture clauses which are contrary to public policy and unenforceable where the partners can expel him at any time and have the option to deprive him of everything without any reason.
The defendants point out that Mr. Kops maintains an active law practice in Florida. Mr. Kops did not provide any sworn affidavit or proof that he is not practicing law, is unable to practice law due to the defendants' fault or was denied access to any file that he requested. Concerning Mr. Kops questioning of the accounting of his capital account, the partnership agreement provides that the firm's regular accountant's determination of the calculation is binding. The accuracy of the accounting of Mr. Kops' capital account is an issue that has not yet been ruled on and is not the subject of this appeal. The defendants note that anyone who leaves the firm whether by expulsion, resignation, death or otherwise, gets paid his capital account.
The defendants assert that the severance provisions are not so punitive as to be anti-competitive. The terms of the contract form the law between the parties under La. C.C. art. 1901. In Reina v. Hartenstine, 426 So.2d 654, 655 (La.App. 1 Cir.1982), the First Circuit stated that: "It is well settled in Louisiana that a partnership agreement is an synallagmatic and commutative contract created only by the consent of the parties." In Hoffman v. Lemle & Kelleher, XXXX-XXXX (La.App. 4 Cir.7/31/02), 824 So.2d 1253, writ denied 2002-2291 (La.11/15/02), 829 So.2d 433, this Court found that the partner was entitled *1195 to his share of the net profits as provided by the partnership agreement he entered into with the partnership, rather than a percentage of the total firm assets. In the present case, the partnership agreement provided for allowing the partner to receive the value of his capital account.

Severability Clause
The defendants point out that even if Sections 1.5 and 7 of the partnership agreement are unenforceable, the partnership agreement contains a severability clause. Therefore, Section 8 of the agreement would still limit Mr. Kops to the value of his capital account balance at the time that his membership ceased.
Section 10.5 provides:
10.5 Severability.
Every provision of this Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder of this Agreement.
Louisiana courts have held that the existence of a severability clause within a contract evidences the parties' intent to enforce the remainder of a contract should one of its provisions be invalidated. In Wied v. TRCM, LLC, (La.App. 2 Cir. 7/24/97), 698 So.2d 685, 688, the Second Circuit found that the invalid non-competition clause did not invalidate the entire contract.
In the present case, the partnership agreement contained a severability clause. Any invalid non-competition clause did not invalidate the entire contract.

Consideration of Mr. Gary

A. Lee's Affidavit
Mr. Kops complains that the trial court did not properly consider the Lee affidavit because it was filed only three days before the hearing, in violation of La. C.C.P. art. 966(B).
La. C.C.P. art. 966(B) provides:
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least four days prior to the date of the hearing unless there are local rules of court to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
Trial judges have discretion, absent prejudice to the moving party, to consider affidavits opposing summary judgment served after the time prescribed by the article. Citizens Bank, Ville Platte v. Manuel, 511 So.2d 31 (La.App. 3 Cir.1987).
Under the provision of La. C.C.P. art. 966 to the effect that an adverse party may serve opposing affidavits prior to the date of hearing on motion for summary judgment, the First Circuit found that the time limitation is mandatory so that affidavits not timely filed are inadmissible in Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc. (La.App. 1 Cir.1977), 346 So.2d 743. However, in Peoples State Bank v. Hwy One Crawfish, Inc., 99-1393 (La.App. 3 Cir. 5/2/00), 771 So.2d 101, writ denied 2000-2842 (La.12/8/00), 776 So.2d 469, the Third Circuit held that the fact *1196 that the defendants' counter-affidavits were filed untimely does not deem them inadmissible; rather, the trial court has discretion to decide whether to admit such affidavits filed untimely.
In Brinkley v. Murrell Enterprises, Inc., 389 So.2d 435 (La.App. 2 Cir.1980), the Second Circuit found that although the affidavit submitted in opposition to the defendant's motion for summary judgment was not timely served, where the trial court admitted the affidavit into evidence, which it had discretion to do, the reviewing court could consider the affidavit in determining whether there was a material fact at issue.
In the present case, Mr. Kops asserts that the trial court did not find that Mr. Lee's affidavit was admissible or inadmissible. Mr. Kops avers that his counsel did not have time to contact him to determine if Mr. Lee's attachment of the draft of the initial partnership agreement was in fact the first draft.
Mr. Futrell filed an affidavit stating that the files were transferred to Mr. Kops. However, Mr. Kops complains that it did not establish that he was properly credited for his prior work on the files and did not have any bearing on the validity of the partnership agreement. Mr. Kops questions the intent of the parties to enter the partnership agreement if Sections 1.5 and 7 were not part of the original agreement, which would render severance impossible.
Mr. Kops did not refute that his clients were able to select him to represent them, or that the clients' files were turned over to Mr. Kops. The plaintiff was not prejudiced by the admission of the affidavits of Mr. Lee and Mr. Futrell where Mr. Kops left the law firm, he was allotted his capital account balance, and since then, he has practiced law. The trial court did not err in granting the defendant's motion for summary judgment and dismissing Mr. Kops's claims based on an illegal contract.

Sanctions
In the reply brief, the defendants assert that the misstatement of the record needs to be addressed by this Court in the form of sanctions. Rule 3.3 of the Rules of Professional Conduct provides in pertinent part: "(a) A lawyer shall not knowingly: (1) Make a false statement of material fact or law to a tribunal." Rule 8.4 of the Rules of Professional Conduct states in pertinent part: "It is professional misconduct for a lawyer to: (c) Engage in conduct involving fraud, deceit, dishonesty or misrepresentation; (d) Engage in conduct that is prejudicial to the administration of justice." However, a request for sanctions or attorney's fees, can be considered only if the party answered the appeal or filed an appeal. La. C.C.P. art. 2133;[4]B. Bennett *1197 Mfg. Co., Inc. v. South Carolina Ins. Co., 96-731 (La.App. Cir. 3/25/97), 692 So.2d 1258. In the present case, the defendants did not appeal or answer the appeal. Their request for sanctions is not considered. The parties may make a complaint for disciplinary proceedings to be considered by the Office of Disciplinary Counsel.
Accordingly, the ruling of the trial court granting the defendants' motion for partial summary judgment is affirmed.
AFFIRMED.
NOTES
[1] La. C.C. art. 2030 provides:

Art.2030. Absolute nullity of contracts
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.
[2] Rule 5.6 of the Rules of Professional Conduct provides:

Rule 5.6. Restrictions on right to practice
A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
(b) An agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.
[3] La. R.S. 23:921 states:

§ 921. Restraint of business prohibited; restraint on forum prohibited; competing business; contracts against engaging in; provisions for
A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void.
(2) The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.
B. Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller will refrain from carrying on or engaging in a business similar to the business being sold or from soliciting customers of the business being sold within a specified parish or parishes, or municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
D. Upon or in anticipation of a dissolution of the partnership, the partnership and the individual partners, including a corporation and the individual shareholders if the corporation is a partner, may agree that none of the partners will carry on a similar business within the same parish or parishes, or municipality or municipalities, or within specified parts thereof, where the partnership business has been transacted, not to exceed a period of two years from the date of dissolution.
E. (1) Parties to a franchise may agree that:
(a) The franchisor shall refrain from selling, distributing, or granting additional franchises to sell or distribute, within defined geographic territory, those products or services which are the subject of the franchise.
(b) The franchisee shall:
(i) During the term of the franchise, refrain from competing with the franchisor or other franchisees of the franchisor or engaging in any other business similar to that which is the subject of the franchise.
(ii) For a period not to exceed two years following severance of the franchise relationship, refrain from engaging in any other business similar to that which is the subject of the franchise and from competing with or soliciting the customers of the franchisor or other franchisees of the franchisor.
(2) As used in this Subsection:
(a) "Franchise" means any continuing commercial relationship created by any arrangement or arrangements as defined in 16 Code of Federal Regulations 436.2(a).
(b) "Franchisee" means any person who participates in a franchise relationship as a franchisee, partner, shareholder with at least a ten percent interest in the franchisee, executive officer of the franchisee, or a person to whom an interest in a franchise is sold, as defined in 16 Code of Federal Regulations 436.2(d), provided that no person shall be included in this definition unless he has signed an agreement expressly binding him to the provisions thereof.
(c) "Franchisor" means any person who participates in a franchise relationship as a franchisor as defined in 16 Code of Federal Regulations 436.2(c).
F. (1) An employee may at any time enter into an agreement with his employer that, for a period not to exceed two years from the date of the termination of employment, he will refrain from engaging in any work or activity to design, write, modify, or implement any computer program that directly competes with any confidential computer program owned, licensed, or marketed by the employer, and to which the employee had direct access during the term of his employment or services.
(2) As used in this Subsection, "confidential" means that which:
(a) Is not generally known to and not readily ascertainable by other persons.
(b) Is the subject of reasonable efforts under the circumstances to maintain its secrecy.
(3) As used in this Subsection, "computer program" means a plan, routine, or set of statements or instructions, including any subset, subroutine, or portion of instructions, regardless of format or medium, which are capable, when incorporated into a machine-readable medium, of causing a computer to perform a particular task or function or achieve a particular result.
(4) As used in this Subsection, "employee" shall mean any individual, corporation, partnership, or any other entity which contracts or agrees with an employer to perform, provide, or furnish any services to, for, or on behalf of such employer.
G. Any agreement covered by Subsections B, C, D, E, or F of this Section shall be considered an obligation not to do, and failure to perform may entitle the obligee to recover damages for the loss sustained and the profit of which he has been deprived. In addition, upon proof of the obligor's failure to perform, and without the necessity of proving irreparable injury, a court of competent jurisdiction shall order injunctive relief enforcing the terms of the agreement.
[4] La. C.C.P. art. 2133 states:

Art. 2133. Answer of appellee; when necessary
A. An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.
B. A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs.