956 So.2d 103 (2007)
Exie JONES, Individually and as Natural Tutrix of the Minor Children, A.J., and T.J., Plaintiff-Appellant
v.
The STATE of Louisiana, Through the Department of Social Services, et al., Defendants-Appellees.
No. 42,034-CA.
Court of Appeal of Louisiana, Second Circuit.
April 25, 2007.
*104 W. James Singleton, Sandy E. Clause, Shreveport, for Appellant.
Charles C. Foti, Jr., Attorney General, John F. Frederickson, Assistant Attorney General, for Appellee State of Louisiana Department of Social Services.
Brian D. Landry, Special Assistant Attorney General, for Appellees Sherman and Bernice Houston.
Before GASKINS, CARAWAY and MOORE, JJ.
GASKINS, J.
In this suit alleging sexual abuse of two female children while in foster care, the plaintiff appeals from the granting of summary judgment in favor of the State of Louisiana and the foster parents. We reverse and remand.

FACTS
A.J. (DOB 12/14/93) and T.J. (DOB 7/16/88)[1] are the daughters of the plaintiff, Exie Jones. On February 8, 2000, the mother filed suit, individually and on behalf of A.J. and T.J., against the Louisiana Department of Social Services (DSS), Sherman Lee Houston, Sr., and Bernice F. Houston. Mr. Houston is the mother's brother. The petition alleged that on August 23, 1995, DSS placed A.J. and T.J. in the foster care of Mr. Houston and his wife. According to the petition, on or about July 23, 1999, Mr. Houston, with his wife's "knowledge, concurrence and consent," sexually abused the girls. In addition to damages from the Houstons, the mother sought recovery against DSS for negligence in placing the girls in the Houstons' home.
On March 9, 2000, Mrs. Houston filed a general denial. On May 23, 2000, DSS filed its answer, in which it asserted that T.J. was placed with the Houstons on September *105 15, 1995, while A.J. was placed there on March 14, 1996. On July 21, 2004, Mr. Houston also filed an answer in which he likewise corrected the dates the children were placed in his home.
In October 2005, the Houstons filed a motion for summary judgment, seeking dismissal of the claims of sexual abuse against them. In support of their motion, they filed, among other documents, deposition excerpts from Dr. Margaret Ann Springer, an expert in child abuse medicine, and Charlotte Williams Fuller, the children's foster care worker. Information in these depositions established the following: the children were removed from their mother's care on June 2, 1995. After an initial placement elsewhere, T.J. was placed with the Houstons on September 15, 1995; she adjusted well in the care of her uncle and aunt, attended school regularly, and made honor roll every six weeks. After first being placed elsewhere, A.J. was also placed with the Houstons on March 14, 1996. Within a few days of A.J.'s placement there, the Houstons contacted DSS to express concern that the child's genitalia was enlarged and requested that she be examined. DSS arranged for A.J. to be seen by Dr. Springer on March 28, 1996. Dr. Springer found evidence of sexual molestation with penetration which predated A.J.'s placement with the Houstons. In June 1998, the children were returned to their mother's custody. Almost 14 months later, both girls were seen by Dr. Springer on July 23, 1999. At that time, Dr. Springer found that each child had recent evidence of sexual molestation with penetration. According to Dr. Springer, these injuries were more recent than 14 months. While some of the injuries required only a few days to heal, some had healing times ranging from several weeks to a few months.
Another exhibit attached to the Houstons' motion was a letter report from psychologist Bruce K. McCormick, who saw both girls in December 2002; he expressed doubt about the possibility of obtaining an accurate and specific report from either about any mistreatment. As to A.J., he found that she had "little independent" memory of any abusive act; however, the topic was apparently openly discussed at home and was "a matter taken for granted and frequently reinforced." While T.J. seemed to have a memory of a specific event that she believed involved sexual abuse, Dr. McCormick expressed concern about the effect of the trauma of her placements, the amount of elapsed time, and the potential contamination of her memory. Other exhibits included A.J.'s medical records, which showed that her health while with the Houstons was normal, and deposition excerpts from Baxter Welch, a state trooper who administered a polygraph exam to Mr. Houston  which he passed  as part of DSS' investigation of the 1999 accusations.
In opposition to the motion for summary judgment, the mother argued that there was a genuine issue of material fact as to when and by whom the girls were molested. She cited Dr. Springer's recitation of A.J.'s answer when queried about the reason for the 1999 exam: "My Uncle Sherman stuck his finger up in me." The mother also submitted deposition excerpts from social worker Cindy Woods in which she recounted interviewing another foster child of the Houstons' who had claimed during a discussion of sexual abuse at camp in 1999 that Mr. Houston was "messing" with her. However, Ms. Woods found this girl to be a poor witness whose story kept changing. The girl had been raped, apparently prior to her placement with the Houstons, in an incident involving complicity by her own brother, and she had emotional and behavioral problems.
*106 The day before the hearing on the motion for summary judgment identical affidavits were executed by A.J. and T.J., then ages 11 and 17, in which each asserted that she was sexual abused by Mr. Houston when she lived in his home from 1996 to 1998.
The motion for summary judgment was argued on December 6, 2005, and submitted. At the hearing, the Houstons objected to the submission of the affidavits as untimely. On December 20, 2005, the trial court granted the motion as to the claims pertaining to T.J., but denied it as to those concerning A.J. Judgment dismissing T.J.'s claims was signed on January 31, 2006. The judgment was certified as a final appealable judgment; however, this court vacated the certification and dismissed the appeal in August 2006, while noting that the appellants could seek review later on an appeal from a final judgment dismissing their claims.
In the meantime, jury trial was set for June 12, 2006.
In April 2006, DSS filed a motion for summary judgment. In support of the motion, DSS attached many of the same items utilized in the Houstons' motion, including A.J.'s medical records, Dr. McCormick's letter report, as well as deposition excerpts from Dr. Springer, Mrs. Fuller, and Trooper Welch. Also attached were affidavits from Dr. Springer, Mrs. Fuller, Marsha McCall, the foster care supervisor who dealt with the Jones family, and Eliza Oakley, the mother's sister. In her affidavit, Dr. Springer reiterated that the scar tissue she found during her March 28, 1996, exam of A.J. showed that the injuries had occurred more than two weeks before and that it was impossible for the injuries to have occurred since A.J.'s placement in the Houstons' home on March 14, 1996. She also opined that the injuries she found during her exams of the girls in July 1999 were only a few weeks old, instead of being more than a year old. Mrs. Fuller's affidavit and its attachments detailed the children's history in foster care, beginning with their removal from their mother's care for inadequate food and shelter.[2] Ms. McCall recounted the facts surrounding A.J.'s placement with the Houstons and their request for a medical examination within a week of receiving the child. Ms. Oakley, the children's maternal aunt, stated that she is close to her nieces, that they never reported any sexual abuse to her, and that she was not aware of any reports of sexual abuse against her brother Sherman.
On April 28, 2006, the Houstons joined in DSS' motion for summary judgment.
A hearing on the motion was set for May 10, 2006. However, neither the mother nor her counsel appeared on that date. When contacted by the trial court, the mother's counsel communicated her belief that the matter had been stayed. The court allowed the mother until first May 25, 2006, then May 26, 2006, to file an opposition.
An opposition to the motion was apparently faxed to the clerk of court by the mother's attorney on May 26, 2006. However, the clerk's stamp indicates that it and the accompanying documents were not processed until June 5, 2006. In support of her opposition, the mother attached several documents, including a deposition excerpt showing that Mrs. Fuller, the foster care worker, was now married to the foster mother/aunt's nephew; a deposition excerpt from Shirley Connley in which she *107 stated that a majority of her visits with the children as their case worker were in the foster parents' presence; and an excerpt from Dr. Springer's deposition in which she recounted that one of the children (presumably A.J., although the child is not named on the excerpted pages) responded to the doctor's query as to why she was seeing the doctor with "My Uncle Sherman stuck his finger up in me." Another excerpt from Dr. Springer's deposition referenced an exam finding on a female child; however, the identity of the child is unclear. The mother also included an excerpt from her own deposition in which she stated that the other foster child who accused Mr. Houston had come by her house with him after A.J. and T.J. were returned to her care.
On June 21, 2006, DSS filed an objection to the mother's opposition, asserting that none of the mother's opposition had been timely filed or served. In its reply memorandum, DSS particularly objected to the affidavits of A.J. and T.J. on multiple grounds, including the age of the affiants and the lack of service. It also asserted that the entire deposition of Mrs. Fuller showed that she had no involvement with Mrs. Houston's nephew from 1992 to 1999 and that they only married in May 1999.
On June 27, 2006, the trial court issued a written judgment in which it noted that it allowed the mother until May 26, 2006 to file a written opposition with the defendants reserving a right to traverse any submissions. According to the court, the opposition was filed on May 26, 2006. Because the mother allegedly failed to serve her memorandum in opposition upon the defendants, traversal by the defendants was extended by the trial court until June 21, 2006, at which time the matter was submitted. The court granted the motion for summary judgment, dismissing with prejudice all of the mother's claims, individually and on behalf of the children.
The mother appeals.
DSS filed a motion to strike the children's affidavits and the deposition excerpts attached to the mother's memorandum in opposition to DSS' motion for summary judgment. We denied the motion inasmuch as the complained of documents were part of the trial court record and, as such, were properly included in the appellate record.

SUMMARY JUDGMENT

Law
Appellate courts review summary judgments de novo using the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App. 2d Cir.1/25/06), 920 So.2d 355.
The burden of proof is on the movant. If, as in this case, the moving party will not bear the burden of proof at trial on the matter before the court on the motion and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the nonmoving party *108 must come forward with factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. arts. 966 and 967; Foshee v. Louisiana Farm Bureau Casualty Insurance Company, 41,842 (La.App. 2d Cir.1/31/07), 948 So.2d 1171.
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967.

Timeliness
The defendants question the timeliness and service of the mother's documents in opposition to their motion for summary judgment. However, trial judges have discretion, absent prejudice to the moving party, to consider affidavits opposing summary judgment served after the time prescribed by the article. Savoie v. Savoie, 03-893 (La.App. 5th Cir.12/30/03), 864 So.2d 742; Kops v. Lee, XXXX-XXXX (La.App. 4th Cir.3/31/04), 871 So.2d 1187; Debrun v. Tumbleweeds Gymnastics, Inc., 39,499 (La.App. 2 Cir. 4/6/05), 900 So.2d 253. In its written judgment, the trial court noted that, "due to alleged failure of service of process" of the mother's memorandum in opposition, it had extended the defendants' time period to traverse. Thus, it appears that the trial court cured any prejudice to the defendants by giving them a longer time period to traverse.

Credibility
The mother argues that a genuine issue of material fact exists in the instant case. In support of her position, she points to her daughters' affidavits in which they state that during the period of 1996 to 1998 when they resided in their uncle's foster care, he sexually assaulted them. Additionally, the mother points to Dr. Springer's testimony that the younger daughter, A.J., volunteered to her that Mr. Houston had molested her. In another deposition excerpt, Dr. Springer described one of the girls as having a healed hymeneal laceration; she stated that the injury was at least two weeks old, "but it could be anywhere in the past before that." While the name of the child is not specified on the excerpted page, the mother's memorandum in opposition identified the child as T.J.
The defendants challenge the girls' affidavits as competent evidence because they were executed when the girls were minors. DSS also contends that the dates in the affidavits were inconsistent with the facts shown in the case. The Houstons likewise assail the reliability of the affidavits.
A trial judge cannot make credibility determinations on a motion for summary judgment. Independent Fire Insurance Company v. Sunbeam Corporation, 1999-2181, 1999-2257 (La.2/29/00), 755 So.2d 226; Hutchinson v. Knights of Columbus, Council No. 5747, XXXX-XXXX (La.2/20/04), 866 So.2d 228. In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. Independent Fire Insurance Company v. Sunbeam Corporation, supra. The credibility of a witness is a question of fact. Hutchinson v. Knights of Columbus, Council No. 5747, supra.
Much of the evidence put forth both for and against summary judgment involves issues of credibility. In his report, Dr. McCormick indicates that A.J. and T.J. are of somewhat diminished intellectual functioning which might contribute to an inability *109 to provide accurate information about any abuse. Yet he also stated that T.J. had a sincere memory of a specific event that she believed was sexual abuse. And Ms. Fuller recounted that T.J. was of sufficient ability to make the school honor roll while living with the Houstons.
No medical evidence here conclusively shows that sexual abuse occurred while the girls were in the Houstons' foster care. The results of A.J.'s first exam indicated that the child was abused prior to her placement with the Houstons. No exams to determine sexual abuse were done thereafter while the girls were still in the Houstons' foster care. However, at the same time, the medical evidence does not necessarily clear Mr. Houston of sexually abusing the girls while they were in his foster care. Dr. Springer indicated that T.J. had a sexual injury, the date of which could not be definitively determined.
Moreover, because credibility is not an issue in a motion for summary judgment, evidence of Mr. Houston's "passed" polygraph test, likely inadmissible at trial, cannot be used to bolster his credibility.
We find that it is unnecessary to resolve the issues pertaining to the competency of the girls' affidavits in which, at ages 11 and 17, they stated that they were abused by Mr. Houston while in his foster care. In view of A.J.'s identification of the uncle to Dr. Springer as someone who molested her, Dr. McCormick's documentation of T.J. having a specific recollection of an incident of abuse, and the medical evidence that indicated that the date of one of T.J.'s injuries could be "anywhere in the past" beyond its two-week healing period, we find that there is a genuine issue of material fact as to whether Mr. Houston sexually abused A.J. and T.J. during the time period when DSS placed the girls in the Houstons' foster care. Thus, we find that summary judgment dismissing the mother's claims, individually and on behalf of A.J. and T.J., is not appropriate.

CONCLUSION
The summary judgment in favor of the defendants dismissing the claims asserted against them on behalf of A.J. and T.J. is reversed. The assessment of the costs of this appeal is deferred until a final judgment on the merits. The matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The record contains two dates of birth for this girl, June 16, 1988 and July 16, 1988. We utilize the one found on a medical record.
[2] In addition to A.J. and T.J., two other siblings were removed from the mother's care in June 1995. A fifth sibling was born in December 1996 and was allowed to remain in the mother's care from birth.