GUIDRY, J.
12In this appeal, Apex Oil Company, Inc. and Petroleum Fuel and Terminal Company, Inc. (collectively “Apex”) appeal a summary judgment granted by the trial court, wherein the trial court dismissed its third-party demand against Scottsdale Insurance Company.
FACTS AND PROCEDURAL HISTORY
This matter originated as a tort action filed pursuant to 33 U.S.C. § 905(a) against AAA Temporaries, Inc. (AAA), plaintiff Elfredroe Love’s direct employer, for injuries sustained, on September 3, 1991, in the course and scope of his employment as a deckhand. In a supplemental and amending petition for damages, plaintiff named Apex as a defendant in the suit. Plaintiff had been assigned by AAA to work for Apex at its Port Alen facility and was performing longshoring duties at the time of his injury. Plaintiff asserted that Apex had failed to secure insurance coverage pursuant to the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U.S.C. § 901, et seq., and therefore, the plaintiff was electing to pursue his claims against Apex in tort in accordance with 33 U.S.C. § 905(a). By summary judgment, the trial court determined that Apex did not have an insurance policy providing coverage under the LHWCA in effect at the time of the plaintiffs accident and decreed that the plaintiff could pursue his claims against Apex as a tort action pursuant to 33 U.S.C. § 905(a). Thereafter, the plaintiff filed another motion for summary judgment to determine the liability of Apex. Following a hearing on the motion, the trial court granted summary judgment in favor of the plaintiff, which was subsequently upheld by this court on appeal. Love v. AAA Temporaries, Inc., 03-2735 (La.App. 1st Cir.11/10/04), 897 So.2d 671.
In the meantime, Apex filed a third-party demand against AAA and Scottsdale Insurance Company, AAA’s comprehensive general liability insurer, averring:
UHL
AAA was insured by Scottsdale on the date of the plaintiffs alleged accident under a general liability insurance policy which included contractual liability coverage for [Apex],
IV.
AAA agreed to provide the aforementioned insurance coverage for the benefit of [Apex] and to indemnify [Apex] for any claims made by laborers provided by AAA.
V.
As a result, [Apex has] a contractual liability claim against AAA which is expressly covered under Scottsdale’s general liability insurance policy.
VI.
Furthermore, [Apex asserts] a direct action against Scottsdale under the provisions of the aforementioned insurance policy in accordance with Louisiana Revised Statute 22:655 et. seq., Louisiana’s Direct Action Statute.
In response thereto, Scottsdale filed an answer denying liability and later filed a motion for summary judgment, contending that Apex’s claims were not covered under the Scottsdale policy in effect at the time of the plaintiffs accident. The trial court *483 initially denied Scottsdale’s motion for summary judgment, but later granted the motion when it was re-urged by Scottsdale. It is that summary judgment that Apex now appeals.
STANDARD OF REVIEW
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Brumfield v. Gafford, 99-1712, p. 3 (La.App. 1st Cir.9/22/00), 768 So.2d 228, 225. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ferguson v. Plummer’s Towing & Recovery Inc., 98-2894, pp. 3-4 (La.App. 1st Cir.2/18/00), 753 So.2d 398, 400.
|4A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Naquin v. Louisiana Power & Light Company, 98-2270, p. 4 (La. App. 1st Cir.3/31/00), 768 So.2d 605, 607, writ denied, 00-1741 (La.9/15/00), 769 So.2d 546. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be properly resolved within the framework of a motion for summary judgment. Waguespack v. Richard Waguespack, Inc., 06-0711, p. 3 (La.App. 1st Cir.2/14/07), 959 So.2d 982.
DISCUSSION
In this appeal, Apex submits that based on the evidence presented, namely the Scottsdale insurance policy and the deposition testimony of the principals of Apex and AAA, genuine issues of material fact exist regarding insurance coverage that make summary judgment improper.
|sAn insurance policy is an agreement between the parties and should be interpreted by using ordinary contract principles. The parties’ intent, as reflected by the words of the policy, determines the extent of coverage. Such intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. Bergeron v. Williams, 05-0847, pp. 14-15 (La.App. 1st Cir.5/12/06), 933 So.2d 803, 813.
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions *484 seeking to narrow an insurer’s obligation are strictly construed against the insurer. For the rule of strict construction to apply, an insurance policy must not only be susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Allstate Insurance Company v. Reid, 04-1620, p. 4 (La.App. 1st Cir.11/30/05), 934 So.2d 56, 59-60, writ denied, 06-2099 (La.11/17/06), 942 So.2d 534.
If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written. La. C.C. art.2046. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer’s liability and impose reasonable conditions on the obligations the insurer contractually assumes. Bonin v. Westport Insurance Corporation, 05-0886, p. 5 (La.5/17/06), 930 So.2d 906, 910-911. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759, 764.
| fiWith these rules of interpretation in mind, we must consider the pertinent language of the Scottsdale insurance contract, which provides, in pertinent part:
CONTRACTUAL LIABILITY INSURANCE
(Designated Contracts Only)
[[Image here]]
SCHEDULE
The insurance afforded for contractual liability is only with respect to such of the following Coverages as are indicated by a specific premium charge applicable thereto. The limit of the company’s liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.
The schedule then lists “Y-Contractual Bodily Injury Liability” and “Z-Contractual Property Damage Liability” as the coverages afforded for contractual liability. The schedule also lists AAA’s contract with Apex as a designated contract. The policy then goes on to state:
I. COVERAGE Y — CONTRACTUAL BODILY INJURY
LIABILITY
COVERAGE Z — CONTRACTUAL PROPERTY DAMAGE
LIABILITY
The company will pay on behalf of the insured all sums which the insured, by reason of contractual liability assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of
Y. bodily injury or
Z. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to *485 pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.
[[Image here]]
IV. ADDITIONAL DEFINITIONS
When used in reference to this insurance (including endorsements forming a part of the policy):
| /contractual liability” means liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the named insured’s products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;
Interpreting the foregoing provisions together so that each provision is given the meaning suggested by the contract as a whole, La. C.C. art.2050, it is clear that Apex’s contract with AAA had to be in writing to be covered under the contractual liability provisions of the Scottsdale policy. Yet, it is undisputed that the contractual agreement between Apex and AAA was not in writing, but was an oral agreement fashioned by Ina Guz-zardo and Roger Lanier, the principals of AAA and Apex, respectively. Although Apex goes to great lengths to establish that as a maritime contract such an oral agreement is proper, the validity of the oral agreement is not questioned. The concern is that under the specific terms of the Scottsdale policy, the contractual liability coverage only extended to “liability expressly assumed under a written contract or agreement.” Therefore, under the plain language of the insurance policy, there would be no contractual liability coverage for Apex’s claims.
Moreover, even assuming that an oral contract was allowed under the terms of the contractual liability provisions of the Scottsdale policy, the determination that there is no coverage for Apex’s claim would still be proper. According to the deposition testimony of the principals of Apex and AAA, the oral agreement expressly provided that AAA would maintain employees it sent to work for Apex on its payroll, cover the employees with its insurance, and do the payroll taxes for the employees. What gave rise to the underlying suit for which Apex is seeking insurance coverage from Scottsdale is AAA’s failure to obtain the proper insurance to cover the claims of the plaintiff, an employee sent by AAA to work for Apex. As such, the claim made by Apex does not stem from AAA being legally obligated to pay to Apex a certain sum for damages based on personal injury or property Isdamage. Rather, it will stem from AAA being obligated to pay to Apex a certain sum, namely, whatever damages the plaintiff recovers from Apex, based on AAA’s failure to obtain the requisite insurance to cover the plaintiffs claims against Apex; or in other words, AAA’s breach of contract. As such, the contractual liability coverage, limited to claims based on personal injury or property damage, cannot be extended to cover a claim for breach of contract. See Ingalls Shipbuilding v. Federal Insurance Co., 410 F.3d 214, 221-222 (5th Cir.), reh’g granted in part, 423 F.3d 522 (5th Cir.2005). Thus, the summary judgment rendered by the trial court in favor of Scottsdale was properly granted.
CONCLUSION
For the foregoing reasons, we affirm the summary judgment rendered by the trial court declaring a lack of coverage and dismissing Apex’s third-party demand against Scottsdale Insurance Company. *486 All costs of this appeal are cast to Apex Oil Company, Inc. and Petroleum Fuel and Terminal Company, Inc.
AFFIRMED.