977 So.2d 989 (2007)
JAMES CONSTRUCTION GROUP, L.L.C. F/K/A Angelo Iafrate Construction, L.L.C.
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2007 CA 0225.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
*991 Eric A. Kracht, George P. Vourvoulias, Baton Rouge, LA, for Plaintiff/Appellant, James Construction Group, L.L.C. F/K/A Infrate Construction, L.L.C.
Timothy Strohschein, Baton Rouge, LA, for Defendant/Appellee, State of Louisiana, through the Department of Transportation and Development.
Before WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
In this suit to recover $420,000 withheld as stipulated damages for untimely completion of a highway construction project, plaintiff appeals a partial summary judgment granted in favor of the defendant. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
The State of Louisiana, through the Department of Transportation and Development (DOTD), awarded a construction contract to JCG Construction Group, L.L.C. (JCG) for a road project involving Interstate 10 (1-10) and known as the Louisiana Avenue Interchange. The contract provided the project was to be completed within four hundred and forty days for a price of $18,900,905.75. As a result of multiple plan changes amending the contract, forty days were added to the original completion date of the contract. According to DOTD's calculations, the deadline for completion of the contract was June 22, 2003. However, the work within the scope of the original contract was not accepted as complete until August 3, 2003. Therefore, DOTD assessed stipulated damages against JCG for a total of forty-two days, at the contractually provided rate of $10,000 per day, and withheld payment of that amount from the contract price earned by JCG. DOTD accepted all work, including work added by plan changes, as being complete on August 28, 2003.
After DOTD refused JCG's demands, JCG filed the instant suit to recover $420,000 as the amount withheld for stipulated damages. JCG alleged DOTD was not entitled to any stipulated damages because the actual deadline for completion of *992 the project was August 31, 2003. This contention was based on the claims that: (1) DOTD agreed in Plan Change 22 to grant JCG fifty-six additional days for completion of the contract; and (2) JCG was entitled to twelve additional days because of a delay that was attributable to DOTD in relocating a fiber-optic cable. In addition to recovery of the sum withheld as stipulated damages, JCG also requested an award of $206,706.51 as damages for additional costs and lost revenues it allegedly suffered as a result of the excessive number of change orders made by DOTD during the construction project.
DOTD filed an answer and reconventional demand seeking to recover $55,779.43, which it alleged JCG was overpaid under the contract as a result of the stipulated damages it incurred. Subsequently, DOTD filed a motion for partial summary judgment holding that: (1) it had properly implemented Plan Change 22; (2) JCG was not entitled to a fifty-six-day extension of the completion date under Plan Change 22; (3) JCG was not entitled to a twelve-day extension of the completion date for additional work related to the relocation of a fiber-optic cable; (4) DOTD properly assessed stipulated damages against JCG; and (5) JCG was liable to DOTD for an overpayment of $55,779.43. Following a hearing, the district court granted a partial summary judgment in favor of DOTD and against JCG for $55,779.43. After making an express determination that there was no just cause for delay, the district court designated the judgment as a final judgment pursuant to La. C.C.P. art. 1915 B. JCG has now appealed, designating five assignments of error.

ASSIGNMENTS OF ERROR
1. The district court erred in its conclusion that DOTD properly implemented Plan Change No. 22 in view of uncontroverted evidence that DOTD breached its written promise to extend the contract time fifty-six days.
2. The district court misconstrued the contract, as well as the substantive law regarding prevention of performance and concurrent delays, and disregarded evidence that DOTD caused and/or otherwise contributed to the delays for which it assessed stipulated damages against JCG.
3. The district court erred in its conclusions that JCG was not entitled to time extensions beyond June 22, 2003, for Plan Changes 22 and 29, as well as for the delays caused by the fiber-optic cable relocation.
4. The district court erred in failing to make the required inquiry as to the reasonableness of the stipulated damages and whether they approximated DOTD's actual damages, disregarding the undisputed evidence that the stipulated damages bore no relationship to DOTD's actual damages.
5. The district court improperly admitted into evidence and relied upon affidavits from DOTD representatives that were not served upon opposing counsel more than fifteen days before the motion hearing, as required by La. C.C.P. art. 966 B.

STANDARD OF REVIEW
On appeal, summary judgments are reviewed de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether *993 the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 B; Love v. AAA Temporaries, Inc., XXXX-XXXX, p. 3 (La.App. 1st Cir.5/4/07), 961 So.2d 480, 483.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966 A(2); Love, XXXX-XXXX at p. 4, 961 So.2d at 483.
The burden of proof is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's Claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 C(2); Love, XXXX-XXXX at p. 4, 961 So.2d at 483.

ASSIGNMENT OF ERROR NUMBER ONE
In its first assignment of error, JCG asserts the district court committed clear error in construing Plan Change 22 as not requiring a fifty-six day extension for completion of the contract. It argues that, at the very least, the court should have found that a genuine issue of material fact precluded summary judgment on the issue of DOTD's implementation of Plan Change 22.
The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art.2046. The use of extrinsic evidence is proper only when a contract is found to be ambiguous after an examination of the four corners of the agreement. Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A), 2001-2219, p. 12 (La.App. 1st Cir.11/20/02), 837 So.2d 11, 23, writs denied. XXXX-XXXX (La.4/21/03), 841 So.2d 805; XXXX-XXXX, XXXX-XXXX, XXXX-XXXX (La.5/16/03), 843 So.2d 1129-30.
Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art.2050. Further, courts should not strain to find an ambiguity where none exists. Finally, whether a contract is ambiguous is a question of law. When addressing such legal issues, a reviewing court conducts a de novo review of questions of law and renders a judgment on the record. Mobil, 2001-2219 at pp. 12-13, 837 So.2d at 23-24.
In the instant case, Plan Change 22 was added to the contract on May 21, 2003, near the end of the construction project, after DOTD realized it had not included the installation of permanent signs in the scope of the original contract with JCG. Plan Change 22 provided for the performance of this work by JCG for an additional *994 price.[1] After delineating the additional work to be performed, Plan Change 22 states:

Note: No days will be added by this plan change. Days will be added by a subsequent plan change when contractor completes all the items in original contract days.
As per request of the contractor, 56 calendar days will be granted to the contract for this work only.
On appeal, JCG contends this language constituted a promise by DOTD to extend the June 22, 2003 completion date by fifty-six days. It asserts DOTD breached this agreement by failing to issue a subsequent plan change adding these days to the contract. Alternatively, it argues the record shows that various DOTD personnel have expressed conflicting interpretations of Plan Change 22, which establishes the existence of a genuine issue of material fact precluding summary judgment. Finally, JCG asserts that any ambiguity in the language of Plan Change 22 must be constructed against DOTD, since it drafted the contract.
We find JCG's contentions meritless. Our examination of the language of Plan Change 22 reveals its terms are clear and unambiguous. It specifically states it will add no additional days to the contract, but that additional days will be added by a subsequent plan change when all items included within the scope of the original contract are completed. Since the plan change states the additional days will be added when all the original contract work is completed, it clearly was not intended that those additional days be used as an extension for completion of the original contract work itself. Eather, the effect of the language is that the additional days will be utilized only for the performance of the specific work added to the contract by the plan change, i.e., the installation of permanent signs. The additional proviso that the fifty-six additional days will be granted "for this work only" reinforces this interpretation. The phrase "this work only" is a clear reference to the sign installation work specifically delineated in the plan change. Since the language of this contractual provision is clear, no further inquiry may be made in search of the parties' intent. Therefore, the extrinsic evidence referred to by JCG as to the various manners in which DOTD personnel may have interpreted the language of this provision cannot properly be considered. See La. C.C. art. 2046: Mobil 2001-2219 at p. 12, 837 So.2d at 23.
Further, we disagree with JCG's assertion that Plan Change 22 cannot be interpreted in the manner we have described, when read in conjunction with Sections 101.41 and 108.10 of the contract. Section 101.41 deals with plan changes to the contract, and provides, in pertinent part, that:
The document [plan change] will establish reasons for the changes, specification requirements, method of measurement, basis of payment and contract time adjustments for the work affected by the changes. When approved and fully executed, the document becomes a part of the contract and a notice to proceed with the affected work. (Emphasis added.)
Section 108.10 provides that "[t]he contract will be considered complete when all work has been satisfactorily completed, the final inspection made, and the work accepted by the DOTD Chief Engineer." JCG argues that, since it is clear under Section 101.41 that plan changes are amendments to the contract rather than separate contracts, *995 the contractual scheme established by these provisions does not allow separate time schedules for completion of the plan change work and the original contract work.
While we agree with JCG's contention that Plan Change 22 was an amendment to the original contract pursuant to Section 101.41, we find nothing in the language of either this provision or Section 108.10 that prohibits the parties from providing for a separate completion date for additional work added by a plan change. The fact that the contract will not be considered complete until all work is performed does not in itself prohibit the parties from specifically providing by agreement for a separate completion date for particular work under the contract.
Lastly, we note that, despite the fact that Plan Change 22 provided that JCG would be granted (through the means of a subsequent plan change) fifty-six additional days for the performance of the extra work required by the plan change, this never occurred. However, Michael Eldridge, a DOTD district construction engineer, explained in his deposition testimony that no subsequent plan change was issued to add days because that was expected to happen only when JCG completed all the original contract work, which did not occur until August 3, 2003. At that point, rather than issue a new plan change, DOTD decided to instead stop assessing stipulated damages against JCG. Therefore, no stipulated damages were assessed for the subsequent period of time during which JCG completed the sign installation work required by Plan Change 22. Thus, since the purpose of adding the extra days was for JCG to avoid stipulated damages while performing the sign installation work, stopping the assessment of damages achieved the same purpose.
This assignment of merit is without merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE
In these assignments of error, JCG argues the district court erred in granting partial summary judgment because genuine issues of material fact exist as to whether DOTD caused or contributed to the delays in completion of the contract work. Specifically, JCG asserts the evidence establishes that it was impossible for it to complete all the contract work any sooner than August 6, 2003, due to the following acts and omissions by DOTD: (1) the amendment of the contract by Plan Change 22 to add work that took fifty-six days to perform; (2) the July 31, 2003 amendment of the contract by Plan Change 29 to add work that took two days to perform; and (3) DOTD's failure until August 6, 2003, to timely remove a fiber-optic cable that prevented JCG from completing work in the area of the cable. Thus, JCG contends it was improper to impose stipulated damages when causes attributable to DOTD prevented the timely completion of all contract work.
Our thorough examination of the documentation offered in support of DOTD's motion for partial summary judgment fails to support JCG's assertion that genuine issues of material fact exist as to DOTD's contribution to the delays that occurred in the project. To the contrary, DOTD's supporting documents establish that the delays for which stipulated damages were assessed against JCG were not attributable to DOTD.
Initially, we note that JCG's arguments relating to Plan Change 22 are the same arguments we previously rejected in assignment of error number one. Plan Change 22 did not grant JCG a blanket *996 extension for completion of the work within the scope of the original contract. Further, DOTD established that the sign work included in the plan change did not delay any of the original contract work to be performed by JCG. Therefore, the addition of the sigh work did not prevent JCG from timely completion of the original contract work.
Further, although no days were added to the contract for the completion of the additional sign work included in the plan change, JCG was not assessed any stipulated damages as a result of this work. During the period for which stipulated damages were assessed, June 22 to August 3, JCG was performing original contract work in addition to the sign work. It was for the untimely performance of that original contract work that stipulated damages were assessed during this period. Once the original contract work was completed on August 3, no further stipulated damages were assessed. Therefore, even though all the work under the contract was not completed, no stipulated damages were assessed for the subsequent period of time during which JCG completed the additional sign installation work.
As another basis for its assertion that it was impossible for it to have completed the contract work by June 22, JCG relies on the fact that the contract was amended by Plan Change 29 to provide for the removal of a billboard sign that was found to be encroaching on the project's right-of-way. This plan change became effective on July 31, 2003, and specifically provided for the addition of two days to the contract as a result of the additional work it required. It is JCG's contention that, since the plan change became effective on July 31 and added two days to the contract, the completion date for the contract should have been extended to August 2.
This argument is specious. In his deposition testimony, Michael Eldridge indicated the billboard removal work included in Plan Change 29 was unrelated to and did not interfere with any of the original contract work. Moreover, the deadline for the original contract work had expired long before Plan Change 29 amended the contract. JCG seems to be arguing that the Plan Change 29 amendment to the contract should somehow have a retroactive effect excusing the untimely completion of the original contract work. We disagree. If JCG's position were accepted, it would have the effect of extending the contract, not by two days, but by forty-one days, from June 22 to August 2. The parties to the contract clearly did not envision such a result. They agreed to the addition of two days for the extra work included in Plan Change 29, and the Plan Change Summary Report introduced by DOTD established that two days were in fact added to the original completion date in fulfillment of this agreement.
Finally, JCG contends it was delayed in completing the contract work by the discovery on July 2 of a buried fiber-optic cable in an area where it was performing excavation work for a drainage ditch. The presence of the cable, which was the responsibility of DOTD to remove, prevented the completion of the excavation work. The cable was moved on August 6. Thus, JCG argues that DOTD cannot recover stipulated damages for delays that occurred before August 6, because DOTD's delay in moving the cable made it impossible for JCG to complete the contract work before that date.
DOTD admitted that the delay in moving the fiber-optic cable prevented JCG from completing the excavation work in the area where the cable was located. It was also established that this excavation work was part of the original contract *997 work. Therefore, JCG's argument would have merit if this excavation work was the only original contract Work that remained incomplete during the period for which stipulated damages were assessed or if the cable's presence prevented JCG from completing other original contract work. However, the fallacy in JCG's position is that DOTD established through the deposition testimony of Michael Eldridge and the affidavit of Hiro Alexandrian, the project engineer, that there was original contract work, other than the excavation work affected by the cable, that was not completed by JCG until August 3. Mr. Eldridge further testified in his deposition that the presence of the cable did not delay JCG's work (other than the excavation work itself) until August 3, when all other original contract work was accepted by DOTD as complete.
After August 3, JCG was delayed by the presence of the cable because it could not perform the excavation work in that area and had no other original contract work to perform. The cable was moved on August 6. Nevertheless, JCG was not prejudiced by the additional three-day delay because DOTD stopped assessing stipulated damages on August 3. Thus, no stipulated damages were imposed for the additional time required for JCG to perform the work affected by the presence of the fiber-optic cable.
For these reasons, we find no genuine issues of material fact existed as to whether any of the delays in completion of the original contract work for which stipulated damages were assessed were attributable to DOTD. These assignments of error lack merit.

ASSIGNMENT OF ERROR NUMBER FOUR
JCG asserts the district court erred in enforcing the contract's stipulated damages clause without inquiring into the reasonableness of the amount stipulated, and in ignoring evidence that the stipulated damages did not approximate DOTD's actual damages.
In arguing stipulated damages were unwarranted in this case, JCG points out the DOTD does not claim it suffered any actual damages itself from the delays in completion of the contract, and admitted in deposition that the stipulated $10,000 per day figure bears no relationship to actual damages suffered by DOTD. Thus, JCG maintains the alleged damages are merely theoretical, since DOTD maintains they are based on damages suffered by the motoring public, and the record contains no proof of any motorist sustaining any actual loss or damage as a result of delays attributable to JCG. JCG further argues that DOTD does not have the legal right or procedural capacity to represent the interests of the motoring public.
In opposition, DOTD notes that the stipulated damages are based on the daily user costs incurred by the public as a result of the interference and inconvenience suffered by motorists during highway construction. According to the affidavit of Jeffrey Lambert, a DOTD engineer, he used a program developed by the Federal Highway Administration to calculate the daily road user costs associated with the construction project between June 22 to August 3, 2003, as a result of the reduction of the speed limit on I-10 during that period from 70 mph to 45 mph. His analysis "showed that the daily road user cost per day during this period because of the reduced speed limit was $21,135."
The purpose of a stipulated damages clause is to fix the measure of damages in advance and to constrain the timely performance of the principal obligation. It is not necessary for the plaintiff *998 to show pecuniary or other actual damage to enforce the clause. La. C.C. art.2009; Utley-James of Louisiana, Inc. v. State, Division of Administration, Department of Facility Planning and Control, 94-2504, p. 6 (La.App. 1st Cir.10/6/95), 671 So.2d 473, 476. The stipulated amount replaces the need for damages to be determined by the court. Lombardo v. Deshotel, 94-1172, p. 6 (La.11/30/94), 647 So.2d 1086, 1090. However, courts may modify stipulated damages if they are so manifestly unreasonable as to be contrary to public policy. La. C.C. art.2012; Lombardo, 94-1172 at p. 6, 647 So, 2d. at 1090. Nevertheless, because a stipulated damages clause gives rise to a presumption that the obligee has suffered loss due to the failure to perform,[2] the obligor bears the burden of defeating that presumption. See La. C.C. art.2009, Revision Comment (d); Saul Litvinoff, 6 Louisiana Civil Law Treatise, Obligations § 13.16, 405 & § 13.18, 408 (West 1999).
Thus, in the present case, JCG bears the burden of rebutting the presumption that the stipulated damages agreed to by the parties were reasonable. In order to meet this burden, JCG must establish, not only that the stipulated damages were manifestly unreasonable, but also that they were so manifestly unreasonable as to offend public policy. See Lombardo, 94-1172 at p. 6, 647 So.2d. at 1090; Litvinoff, 6 Louisiana Civil Law Treatise, Obligations § 13.18, 408.
Based on our review of the record, we find no genuine issues of material fact exist as to the reasonableness of the stipulated damages. Under La. R.S. 32:2 A(1), DOTD has the duty, as an exercise of the police power of the state, to supervise and regulate all traffic on highways within the state. In the exercise of this duty, DOTD entered into the road construction contract at issue herein with JCG. Under the heading "DISINCENTIVE FOR LATE CONSTRUCTION", the contract provided for the imposition of stipulated damages of $10,000 per day for each day of late completion of the contract work. The provision states specifically that these stipulated damages are imposed, not as a penalty, but "[i]n order to minimize construction duration and construction operations' impact on roadway users . . ." The $10,000 figure was based on "the daily road user costs," which was defined elsewhere in the contract as representing "the average daily cost of interference and inconvenience to the road user."
A contract has the effect of law between the parties. La. C.C. art.1983. Moreover, the parties are free to contract for any object that is lawful. La. C.C. art. 1971. "Freedom of contract" signifies that parties to an agreement have the right and power to fashion their own bargains. Louisiana Smoked Products, Inc. v. Savoie's Sausage and Food Products, Inc., 96-1716, p. 14 (La.7/1/97), 696 So.2d 1373, 1380. In this case, the stated object of the stipulated damages clause was to minimize the impact of the construction on the motoring public. In accordance with that object, the contract indicated the measure of those damages would be the average daily road user costs, representing the interference and inconvenience suffered by motorists as a result of the construction.
In view of its statutory duty to supervise and regulate roadways, DOTD had the authority to enter into an agreement with a contractor that sought to limit the impact of road construction on the motoring public by the use of stipulated damages as a *999 disincentive for late construction, and to specify that those damages would be based on the daily road user costs to the motoring public. JCG entered freely into this contract, and cannot now, in order to avoid its end of the bargain, complain that some other measure of damages should have been used. We further note that JCG did not provide any documentation to show that the $10,000 daily user cost was unreasonable. To the contrary, DOTD introduced evidence that the actual daily road user costs incurred by the motoring public during the period in question was $21,135.
Accordingly, we find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER FIVE
In this assignment of error, JCG contends the district erred in admitting into evidence two affidavits offered by DOTD at the motion hearing.
DOTD filed its motion for partial summary judgment and supporting documents on July 13, 2006. A hearing on the motion was scheduled for November 6. JCG filed an opposition memorandum, with exhibits, on October 27. DOTD responded by serving opposing counsel with a reply memorandum, with attached exhibits, on November 2. At the motion hearing, JCG objected to the introduction of two of the affidavits attached to DOTD's reply memorandum on the grounds that they were not timely served under the provisions of La. C.C.P. art. 966 B.[3] The district court overruled the objection on the basis that the affidavits were part of DOTD's response to JCG's October 27 opposition memorandum and exhibits. In so ruling, the court observed, "I don't know how they [DOTD] could do a rebuttal affidavit before they have received your opposition."
Louisiana Civil Code Procedure article 966 B provides that a motion for summary judgment and supporting affidavits shall be served at least fifteen days before the motion hearing. In Buggage v. Volks Constructors, XXXX-XXXX (La.5/5/06), 928 So.2d 536, the Louisiana Supreme Court reversed this court and reinstated the ruling of a trial court that had excluded a latefiled opposition and affidavit that was filed a few minutes before a summary judgment hearing. However, while noting that the time limitation established by La. C.C.P. art. 966 B was mandatory, it nevertheless indicated a trial court has discretion as to whether or not to admit a late-filed affidavit. Rather than holding that untimely affidavits must be excluded by the trial court, the Court specifically stated that such affidavits "can" be excluded by the trial court, and noted that the trial court "acted within its discretion" in excluding the opposition. Buggage, XXXX-XXXX at p. 1, 928 So.2d at 536. Additionally, other courts of this state have also indicated that district courts have discretion, absent prejudice, to consider affidavits served after the time prescribed by La. C.C.P. art. 966 B. See Jones v. State, 42,034, pp. 8-9 (La.App.2d Cir.4/25/07), 956 So.2d 103, 108, writ denied, XXXX-XXXX (La.9/14/07), 963 So.2d 1000; Savoie v. Savoie, 2003-893, p. 6 (La.App. 5th Cir.12/30/03), 864 So.2d 742, 745; Kops v. Lee, XXXX-XXXX, p. 11 (La. App. 4th Cir.3/31/04), 871 So.2d 1187, 1195; White v. Gulf States Utilities, 465 So.2d 287, 289 (La.App. 3rd Cir.), writ denied, 468 So.2d 576 (1985).
In this case, we find no abuse of discretion in the trial court's decision to admit *1000 the affidavits in question. As the district court observed in overruling the objection, the affidavits were filed by DOTD on November 2 in response to defenses raised by JCG in its October 27 opposition memorandum. Moreover, JCG does not allege any specific prejudice it suffered as a result of the admission of these affidavits, other than generally alleging it had inadequate time to respond, despite the fact that it had at least three full days to do so. Significantly, JCG did not request that this matter be held open to give it an opportunity to respond. Under these circumstances, the district court did not abuse its discretion in admitting the affidavits in question.
This assignment of error lacks merit.

CONCLUSION
For the above reasons, we affirm the district court judgment granting partial summary judgment in favor of DOTD. All costs of this appeal are to be paid by the appellant, JCG. AFFIRMED.
WHIPPLE, J., concurs.
NOTES
[1] Section 101.41 of the contract provides that plan changes become a part of the contract.
[2] Under La. C.C. art. 1994, a delay in performance by an obligor is included within the meaning of a "failure to perform" a conventional obligation.
[3] Specifically, JCG objected to the affidavit (DOTD-7) of Hiro Alexandrian, the DOTD project engineer, and the affidavit (DOTD-10) of Jeffrey Lambert, a DOTD pavement engineer.