LISSETTE SAVOY MENENDEZ AS THE APPOINTED NATURAL TRUTRIX OF VANESSA SAVOY
v.
MICHAEL B. O'NIELL, FRIENDS ENTERPRISES, LLC, AND PROGRESSIVE SECURITY INSURANCE COMPANY.
No. 2007 CA 2257.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
LEWIS O. UNGLESBY, ROBERT M. MARIONNEAUX, Jr. Baton Rouge, LA, Attorneys for Plaintiff-Appellant Vanessa Savoy.
WILLIAM C. HELM, Baton Rouge, LA, Attorney for Defendant-Appellee Marc Fraioli.
Donald R. Smith, Kelly E. Balfour, Baton Rouge, LA, Attorneys for Defendant  Appellee Progressive Security Ins. Co.
Charles L. Chassaignac, IV, Baton Rouge, LA, Attorney for Defendant  Appellee Friends Enterprises, LLC.
C. John Naquin, Jr., Baton Rouge, LA, Attorney for Defendants  Appellees Darin P. Adams & C.B., LLC.
Before: CARTER, C.J., PETTIGREW and WELCH, JJ.
WELCH, J.
In this appeal, plaintiff, Lissette Savoy Menendez, challenges a summary judgment entered by the trial court dismissing defendant, Marc Fraioli, from this tort litigation. We affirm.

BACKGROUND
On February 22, 2004, a vehicle driven by Michael O'Niell crashed while travelling on Louisiana Highway 30 in East Baton Rouge Parish. Vanessa Savoy, a 19-year old guest passenger in the vehicle, sustained severe injuries as a result of the collision. On April 20, 2004, Vanessa's tutrix, Lissette Savoy Menendez, filed this lawsuit seeking to recover damages arising from the collision on behalf of her daughter. Named as defendants were Michael O'Niell, Friends Enterprises, LLC, the alleged owner of the vehicle he was driving, and Progressive Security Insurance Company, the alleged insurer of O'Niell and Friends Enterprises, LLC. In the petition, plaintiff alleged that O'Niell was intoxicated at the time of the accident and that his intoxication caused the collision.
In a supplemental and amending petition, plaintiff added additional defendants to the litigation, including Triumvirate of Baton Rouge, Inc., d/b/a Fred's Bar and Grill and its owner, Marc Fraioli, along with C.B., LLC, d/b/a Reggie's and its owner, Darin Adams. In the petition, plaintiff alleged that O'Niell, who was under the legal drinking age, consumed alcohol at Fred's and Reggie's on the evening of the accident. She asserted that O'Niell became intoxicated as a result of the negligent supervision of the bar employees, premising liability against Triumvirate and C.B. on the theory of respondeat superior. She also alleged that Triumvirate and C.B. violated Louisiana law prohibiting the sale of alcohol to under-age patrons and thus breached a statutory duty. Plaintiff further alleged that Mr. Fraioli, as the owner of Triumvirate, and Mr. Adams, as the owner of C.B., were liable under the alter ego doctrine.
Mr. Fraioli filed a motion for summary judgment, asserting Triumvirate's corporate shield as a defense to his personal liability. He charged that plaintiff had no evidence to support her allegation that he is the alter ego of Triumvirate and that plaintiff could not carry her heavy burden of proof placed by law on plaintiffs seeking to pierce the corporate veil. In support of the motion, Mr. Fraioli attached an affidavit in which he attested that Triumvirate owns and operates Fred's Bar and Grill and that he is the corporation's sole shareholder. He also introduced a certificate issued by the Secretary of State on July 6, 2006, in which the Secretary certified that Triumvirate filed its charter and qualified to do business in this state on January 18, 1982, and that Triumvirate is currently in good standing and is authorized to do business in this state. Additionally, Mr. Fraioli introduced Triumvirate's 1982 articles of incorporation, the corporation's initial report, along with various annual reports filed by the corporation from 1983 through January 18, 2006.
In opposition to the motion, plaintiff urged that there were genuine issues of material fact as to whether Triumvirate is the alter ego of Mr. Fraioli, thus preventing Mr. Fraioli from hiding behind its corporate veil and making him personally liable for the actions of Fred's. Plaintiff introduced O'Nieli's deposition, in which he acknowledged that he was 20 years old at the time of the accident, and admitted that he consumed alcohol at Fred's prior to the accident. She also introduced the corporate deposition of Triumvirate, which was represented by Mr. Fraioli. In the deposition, Mr. Fraioli attested that Triumvirate owned Fred's and that he was the president and sole owner of Triumvirate, and as such, had sole control over Fred's operation.
Mr. Fraioli, who was not present at Fred's on the night in question, was asked to testify regarding Fred's general operational practices near the time of the accident, including its hiring practices and methods to prevent under-age consumption of alcohol. Mr. Fraioli testified that Fred's generally had four employees working on a given night, including a manager, bartender, and two doormen. Mr. Fraioli stated that he generally worked at the bar every morning at 7:30 and one night per week. He testified that Fred's requires its patrons to show proof of age, and allows females who are 19 and 20 and males who are 20, to enter the bar but not to consume alcohol. Patrons who are 21 and thus of the legal age to drink are given a wristband, while patrons under that age are stamped with a stamp that states "under twenty-one." Mr. Fraioli attested that Fred's employees generally monitor the crowd to make sure only the people who have wristbands are drinking. He acknowledged, however, that he was aware that under-age patrons were getting other persons to buy their alcohol at his establishment. He also admitted that Fred's had been cited in 1987 or 1988 by the Alcohol and Control Board for serving alcohol to an under-age patron.
In support of her attempt to pierce the corporate veil, plaintiff stressed that Mr. Fraioli, the sole member of Triumvirate, ran, operated, and managed Fred's. She also focused on the fact that Fred's had been cited for serving under-age drinkers and that Mr. Fraioli knew that under-age persons got persons of age to buy alcohol for them at Fred's. The trial court found Mr. Fraioli's active involvement in Fred's operation and his knowledge of under-age consumption of alcohol at Fred's were insufficient, as a matter of law, to justify piercing the corporate veil. In granting Mr. Fraioli's motion for summary judgment, the court concluded that there were no exceptional circumstances that would justify denying Mr. Fraioli the benefit of limited personal liability.
This appeal, taken by plaintiff, followed.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria governing the trial court's consideration of whether a summary judgment is appropriate. Love v. AAA Temporaries, Inc., XXXX-XXXX, p. 3 (La. App. 1st Cir. 5/4/07), 961 So.2d 480, 483. Under La. C.C.P. art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law.
In her pleadings, plaintiff premised Mr. Fraioii's liability solely on the basis of the alter ego doctrine. She asserted that because Triumvirate is the "alter ego" of Mr. Fraioii, Mr. FraioH is personally liable for the actions of the corporation in allegedly serving or allowing an under-age patron to consume alcohol at Fred's. The issue presented by the motion for summary judgment was thus whether Mr. Fraioii could be held personally liable for the debt of Triumvirate, a corporation of which he is the sole shareholder.
The law on shareholder liability for the debts of a corporation is well-settled. As a general rule, a corporation is a distinct legal entity, separate from the individuals who comprise them, and individual shareholders are not liable for the debts of the corporation. La. C.C. art. 24; Rock v. ATPIC Trucking Co., Inc., 98-1420, p. 7 (La. App. 1st Cir. 6/25/99), 739 So.2d 874, 879. There are, however, limited exceptions to the rule of non-liability of shareholders for the debts of the corporation, whereby a court may ignore the corporate fiction and hold the individual shareholders liable. Imperial Trading Co., Inc. v. Uter, XXXX-XXXX, p. 8 (La. App. 1st Cir. 12/20/02), 837 So.2d 663, 669, writ denied. XXXX-XXXX (La. 3/28/03), 840 So.2d 578. Louisiana courts have allowed a corporate veil to be pierced in only two exceptional circumstances. The first is where the shareholders, acting through the corporation, commit fraud or deceit on a third party. The second occurs where the shareholders fail to conduct business on a corporate footing, disregarding the corporate entity to such extent that they and the corporation become indistinguishable. McDonough Marine Service, a Division of Marmac Corporation v. Doucet, 95-2087, p. 5 (La. App. 1st Cir. 6/28/96), 694 So.2d 305, 308. In the second scenario, the corporation is referred to as the "instrumentality" or "alter ego" of the members. Id. Some factors considered in determining whether to apply the alter ego doctrine include: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder or director meetings. McDonough, 95-2087 at p. 7, 694 So.2d at 309.
Where a shareholder asserts the corporate shield as a defense from liability, the shareholder has the initial burden of proving the existence of the corporation, and may carry this burden by the use of corporate charter or other documents. The burden then shifts to the plaintiff to show the exceptional circumstances which merit piercing the corporate veil and holding the individual shareholder liable. Id.
Mr. Fraioli met his burden of proving Triumvirate's corporate existence. To survive the motion for summary judgment, the burden of proof shifted to plaintiff, requiring her to produce evidence in support of her alter ego theory of liability. Plaintiff failed to offer any evidence identified by law as indicia that Mr. Fraioli and Triumvirate are not actually separate entities. Although plaintiff took Triumvirate's corporate deposition, no questions were posed to Mr. Fraioli regarding Triumvirate's accounting or record-keeping practices, or whether Triumvirate followed statutory formalities in transacting its affairs. Plaintiff instead relies on the fact that Triumvirate is solely owned, operated, and controlled by Mr. Fraioli. However, the involvement of a sole or majority shareholder in a corporation is not sufficient alone, as a matter of law, to establish a basis for disregarding the corporate entity. Riddle v. Simmons, 40,000, p. 16 (La. App. 2nd Cir. 2/16/06), 922 So.2d 1267, 1279-80, writ denied, XXXX-XXXX (La. 6/2/06), 929 So.2d 1259. Moreover, we find the fact that Mr. Fraioli may have been aware of under-age consumption of alcohol at his establishment is not, standing alone, a sufficient basis to pierce the corporate veil and impose personal liability on him under the alter ego doctrine.
It is clear that plaintiff failed to offer evidence to create a material issue of fact as to Mr. Fraioli's liability on an alter ego theory.[1] Accordingly, the trial court correctly granted the motion for summary judgment as to plaintiffs theory of Mr. Fraioli's personal liability based on the alter ego doctrine.

CONCLUSION
For the foregoing reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant, Lissette Savoy Menendez.
AFFIRMED.
NOTES
[1] We note that in her petition, plaintiff failed to allege that Mr. Fraioli, who was not present at Fred's on the night in question, had any personal involvement in O'Niell's alcohol consumption that might support a cause of action for a breach of a personal duty and the imposition of personal liability on that legal basis.